IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| IN THE COMPLAINT OF ARDEN A. JOHNSON, etc., | ) ) ) ) ) |
| Petitioner. | CIVIL ACTION 04-0128-WS-B |

**ORDER**

This matter is before the Court on the motion of claimant Dog River Marina and Boat Works, Inc. ("Dog River") for summary judgment as to the claims filed against it by the petitioner and his insurer, Insurance Company of North America ("ICNA"). (Doc. 149). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 150-51, 168, 171, 175), and the motion is ripe for resolution. After carefully considering all the foregoing materials, the Court concludes that the motion is due to be granted in part and denied in part.

**BACKGROUND**

The petitioner's vessel was berthed at Dog River. Vessels belonging to claimants Conrad Armbrecht, Sam Haginas and Duncan Greenwood were also berthed there. On September 6, 2003, a fire broke out on the petitioner's vessel, damaging or destroying that vessel and those of the claimants, as well as Dog River's facility. The petitioner brought this action seeking exoneration from or limitation of liability. (Doc. 1). The petitioner and ICNA later filed a claim against Dog River for negligence and breach of bailment. (Doc. 55, Exhibit A).[1]

The marina berth lease/storage agreement ("the Agreement") between Dog River and the petitioner provides in pertinent part as follows:

> Waiver of Subrogation: Owner waives any right or claim against the Marina for damage sustained by Owner which is covered under any insurance policy, and Owner shall cause Owner's insurance carriers to waive their respective rights of subrogation with respect to the same, and to so notify Marina.

(Doc. 150, Exhibit A, Exhibit 7, ¶ 8). Dog River argues that the petitioner's loss was covered by

---

[1] For reasons unknown, the petitioner and ICNA disregarded the Court's order instructing them to file an executed version of this pleading as a separate document. (Doc. 63).

insurance and that the claims of the petitioner (directly) and ICNA (as derivative of those of the petitioner) are consequently barred by this clause. The petitioner and ICNA respond that the provision is unenforceable as contrary to public policy, because it constitutes either an exculpatory clause or a contract of adhesion.

## DETERMINATIONS OF UNCONTROVERTED FACT

At the time the petitioner entered the Agreement, there were at least three marinas besides Dog River located on or adjacent to Mobile Bay that had the capacity to berth the petitioner's vessel, and two others at Orange Beach. (Doc. 175, Exhibit 2, ¶ 4).

ICNA paid the petitioner in excess of $600,000 to cover his losses caused by the fire. (Doc. 55, ¶ 2).

## CONCLUSIONS OF LAW

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1333. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986))(footnote omitted).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving

party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991)(en banc) (emphasis in original); *accord Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

At trial, Dog River bears the burden of showing that the waiver-of-subrogation clause is part of the Agreement and that it prevents the petitioner and ICNA from pursuing their claims against Dog River, while the petitioner and ICNA bear the burden of showing that the clause is unenforceable as against public policy. This distribution of burdens at trial determines the parties' burdens on motion for summary judgment.

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). The Court therefore confines its consideration to those arguments the parties have elected to assert expressly.

### A. Meaning of the Clause.

The waiver-of-subrogation clause unambiguously means that the petitioner cannot seek recovery from Dog River for any damage that is covered by insurance, and that the petitioner will have its insurers waive their usual subrogation rights as to Dog River. The petitioner and ICNA attempt to concoct an ambiguity by looking to the parties' post-execution conduct,[2] but extrinsic evidence can be considered only after the Court makes the legal determination that the contract language itself is ambiguous. *E.g., Atlantic Lines, Ltd. v. Narwhal, Ltd.*, 514 F.2d 726, 730 n.8 (5th Cir. 1975). Because the contract language patently is not ambiguous, that is the end of the inquiry.

### B. Agreement to the Clause.

The petitioner and ICNA suggest that, by allowing the petitioner to berth his vessel before confirming that he had obtained a waiver of subrogation, Dog River manifested its assent

---

[2]Specifically, the petitioner's failure to obtain a waiver of subrogation rights; his failure to notify Dog River; Dog River's failure to ask the petitioner to fulfill his contractual obligations; and Dog River's allowing the petitioner to berth his vessel without providing confirmation that he had obtained a waiver of subrogation. (Doc. 168 at 7).

to exclude the waiver-of-subrogation clause from the Agreement. (Doc. 168 at 7). While the petitioner and ICNA state that "[c]onduct of a party can draw the inference of assent to an agreement," (*id*.), the rule articulated in the only case they cite actually provides that "[c]onduct of one party *from which the other party may reasonably draw the inference of assent* to an agreement is effective as acceptance." *Ex parte Rush*, 730 So. 2d 1175, 1178 (Ala. 1999) (emphasis added). The petitioner and ICNA provide no authority or argument to support the remarkable proposition that a contracting party's failure to ensure that the other contracting party has performed all his obligations can manifest the first party's agreement to excise the unperformed obligation from the contract. No party could reasonably draw the inference that Dog River's failure to police the petitioner's obtaining of a waiver of subrogation reflected Dog River's agreement to remove that obligation from the contract.

### C. Effect of the Clause.

By its explicit terms, the clause prevents the petitioner from suing Dog River in this action for the $600,000-plus he received from ICNA. Dog River "assume[s]" that the petitioner does not sue for any uninsured losses since he did not submit initial disclosures identifying any such losses. (Doc. 150 at 3-4). Because the petitioner bears the burden at trial of showing that he incurred uninsured losses, Dog River could meet its initial burden on motion for summary judgment by either "negating" the petitioner's ability to prove the existence of such losses or by "point[ing] to materials on file that demonstrate" that the petitioner cannot prove the existence of such losses. *Clark v. Coats & Clark, Inc.,* 929 F.2d at 608. Dog River, however, has done neither, and its "assum[ption]" that no uninsured losses are involved is insufficient to carry its initial burden: "Even after *Celotex*, it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id.*[3]

---

[3]Dog River's assumption is also apparently incorrect, as the petitioner asserts that his claim against Dog River is "for his uninsured losses associated with the fire." (Doc. 168 at 4). Whether the petitioner's apparent failure in discovery to detail these losses, (Doc. 150 at 3-4), precludes him from now claiming them is not presented by this motion. To the extent Dog River suggests that the petitioner's claim against it is too narrow to encompass uninsured losses, the suggestion is incorrect.

ICNA admits that its only basis for suit against Dog River is subrogation.  (Doc. 55, ¶ 2).  Because subrogation merely gives the insurer the rights of the insured (to the extent the insurer compensated the insured), and because the petitioner has no rights against Dog River with respect to its compensated losses, neither does ICNA.[4]  The petitioner and ICNA do not argue otherwise.

### D. Enforceability of the Clause.
### 1. Public Policy.

Clauses in maritime contracts that purport to exculpate one party from its own negligence can be unenforceable as contrary to public policy.  *See Bisso v. Inland Waterways Corp.*, 349 U.S. 85 (1955).  However, binding precedent beginning with *Fluor Western, Inc. v. G&H Offshore Towing Co.*, 447 F.2d 35, 39-40 (5th Cir. 1970), has repeatedly confirmed that waiver-of-subrogation clauses do not constitute exculpatory clauses and thus are not captured by *Bisso*.[5]  The reason is not difficult to see:  while a true exculpatory clause precludes the defendant's liability for its own negligence, a waiver-of-subrogation clause leaves the defendant's potential liability intact but reduces its exposure to those losses not covered by the plaintiff's insurance.[6]

The petitioner and ICNA ignore this line of authority.  Instead, they cite several cases for the proposition that "[a] limited liability clause is enforceable if it satisfies a three-step analysis .... First, the limited liability clause must clearly and unequivocally indicate the parties'

---

[4]This is the precise holding of *E.P.T.M. - USA, Inc. v. Natural Gas Pipeline Co.*, 591 F. Supp. 971, 979 (E.D. La. 1984), in precisely the same waiver-of-subrogation context.

[5]*E.g., BASF Wyandotte Corp. v. Tug LEANDER*, 590 F.2d 96, 97 (5th Cir. 1979); *Twenty Grand Offshore, Inc. v. West India Carriers, Inc.*, 492 F.2d 679, 685-86 (5th Cir. 1974); *accord Hercules, Inc. v. Stevens Shipping Co.*, 698 F.2d 726, 738 (5th Cir. 1983)("This Circuit has held that cross insurance clauses with waiver of subrogation do not run afoul of *Bisso*.")(citing *Twenty Grand* and *Fluor Western*).

[6]Such a provision "neither by indirection nor otherwise relieves the tug owner or the towboat of its liability to the barge owner as the result of the towboat's negligence.  The barge owner could have sued the tug owner if the insurance underwriters had ... failed to pay ... as well as [for] any other losses not covered under the policy."  *Twenty Grand Offshore v. West India Carriers*, 494 F.2d at 683; *accord Fluor Western v. G&H Offshore Towing*, 447 F.2d at 39.

intention.  Second, the limitation must not absolve the repairer of all liability and must still provide a deterrent to negligence. ...  Third, the parties to the contract must have equal bargaining power." *Merrill Stevens Dry Dock Co. v. M/V YEOCOMICO II*, 329 F.3d 809, 813 (11th Cir. 2003); *accord Diesel "Repower," Inc. v. Islander Investments, Ltd.*, 271 F.3d 1318, 1324 (11th Cir. 2001); *see also Edward v. Uhlig & Associates, Inc*., 785 F.2d 877, 888-89 (11th Cir. 1986).

Were the *Merrill Stevens* line of cases to apply here, it might well be difficult for Dog River to avoid summary judgment: that line of authority requires that the clause "provide a deterrent to negligence,"[7] while the *Fluor Western* line does not do so; on the contrary, it appears to recognize that, in the face of insurance, a defendant's financial exposure to others for its negligence may be largely theoretical.[8]

The petitioner and ICNA, however, have offered no basis for applying the *Merrill Stevens* line in lieu of the *Fluor Western* line, and the Court can see none.  The *Fluor Western* line by its terms applies to waiver-of-subrogation clauses, which is the precise clause at issue here.  It is true that the *Fluor Western* cases involve towing contracts rather than berth leases, but in the same way the *Merrill Stevens* cases involve boat repair contracts, not berth leases.  *Bisso* itself concerned a towing contract, and if waiver-of-subrogation clauses in towing contracts escape *Bisso*, similar clauses in other maritime contracts must surely escape as well.  While it may be reasonable to wonder why a waiver-of-subrogation clause that effectively insulates a defendant from payment to the plaintiff or its insurer should be upheld more readily than a clause

---

[7]*See Merrill Stevens Dry Dock v. M/V YEOCOMICO II*, 329 F.3d at 812, 813 (test satisfied when the contract capped the defendant's exposure at $1,000,000); *Diesel "Repower" v. Islander Investments*, 271 F.3d at 1324-25 (test satisfied when the contract excluded loss of income, freight losses and consequential and punitive damages but required the defendant to replace parts for free within the warranty period, to refund the purchase price of the equipment, and to expend uncompensated labor hours).

[8]"[A]s a practical matter, [the defendant's] chances of being sued by the cargo owner were indeed small in view of the fact that the cargo owner was protected by the insurance." *Fluor Western v. G&H Offshore Towing*, 447 F.2d at 39.  The actual chances of being sued in a particular case — and thus the magnitude of any deterrent to negligence — presumably fluctuate with the amount and terms of the insurance coverage.

that leaves the defendant plainly exposed to pay damages and/or incur unreimbursed expenses, that decision is for — and has been made by — the Eleventh Circuit.[9]  Even were the Court to conclude that the *Merrill Stevens* test would otherwise capture the present situation, the *Fluor Western* line would still control under the prior-panel-precedent rule.[10]

In summary, the waiver-of-subrogation clause at issue here is to be evaluated under the *Fluor Western* line of authority and not under the *Merrill Stevens* line.  The petitioner and ICNA suggest, and the Court discerns, no failure to satisfy *Fluor Western*.  Accordingly, the clause is not unenforceable under either line.

### 2. Unconscionability.

Because waiver-of-subrogation clauses do not violate public policy under *Bisso*, "[t]he only overriding public policy that would appear to have possible applicability would be the policy against adhesion contracts."  *Fluor Western v. G&H Offshore Towing*, 447 F.2d at 40.  The petitioner and ICNA assume that adhesive contracts are unenforceable per se, but the correct rule is that "[a]dhesive clauses ... are always subject to the defense of unconscionability."  *Id*. at 39.

The petitioner and ICNA insist that the Court evaluate their defense[11] under Michigan law as described in *Bayshore Ford Truck Sales, Inc. v. Ford Motor Co.*, 380 F.3d 1331 (11th Cir. 2004), under which "[a] party seeking to set aside a contract as an adhesion contract must show that there were no real alternatives to the contractual provisions, considering such factors as relative bargaining power, economic strength, and any existing alternatives."  *Id*. at 1338 n.7.

The petitioner and ICNA make no argument that "economic strength" weighs in their

---

[9]It appears that no case in the *Merrill Stevens* strand acknowledged the existence of the *Fluor Western* line of cases.  Certainly no effort was made to harmonize the two.

[10]"When faced with an intra-circuit split we must apply the 'earliest case' rule, meaning when circuit authority is in conflict, a panel should look to the line of authority containing the earliest case, because a decision of a prior panel cannot be overturned by a later panel."  *Morrison v. Amway Corp.*, 323 F.3d 920, 929 (11th Cir. 2003)(internal quotes omitted).

[11]"[T]he burden of proof fall[s] upon the party seeking to have the clauses declared void" as unconscionable.  *Fluor Western v. G&H Offshore Towing*, 447 F.2d at 40.

favor. Instead, they argue that the petitioner "had no bargaining power to change the terms of the contract" because it was offered on a take-it-or-leave-it basis. (Doc. 168 at 5). Assuming without deciding that they have presented sufficient evidence to create a jury issue as to whether the contract was offered on this basis,[12] a take-it-or-leave-it proposal does not of itself allow a party to avoid an unfavorable contract under Michigan law.[13]

Turning to the existence of alternatives, the petitioner offers only his declaration that Dog River "was the only marina in Mobile, Alabama *that I knew of* that had the capacity to slip/berth my 2001 SeaRay Sundancer motor yacht." (Doc. 171, Exhibit A, ¶ 4 (emphasis added)).[14] On its face, the declaration discloses the petitioner's ignorance of the local marina capacity. It is thus uncontroverted that there were at least five marinas in the area — including three on or adjacent to Mobile Bay and two in Orange Beach — that had the capacity to berth the petitioner's vessel.[15] In short, the petitioner and ICNA have failed to demonstrate the existence of a genuine issue of material fact as to whether the waiver-of-subrogation clause was, or was part of, an adhesive contract susceptible of avoidance under the Michigan law they request the Court to apply. Even had they made such a showing, the result would be no different. That a contract was entered without bargaining power or existing alternatives does not of itself entitle a party to avoid the contract or any provision within it. As long as the challenged

---

[12] It appears that the petitioner signed the document merely because Dog River's representative said that "they need that contract signed in order to bill [his] credit card for the monthly dockage," (Doc. 171, Exhibit A, ¶ 3) — a statement suggesting the common business practice of requiring a signed contract before providing services — and not because anyone told him he could either sign the proffered contract as presented or take his business elsewhere.

[13] *See, e.g., USAA Group v. Universal Alarms, Inc*., 405 N.W.2d 146, 147 (Mich. App. 1987)("The essence of an adhesion contract is that it is offered on a take or leave it basis *to a consumer who has no realistic bargaining strength and who cannot obtain the desired services or goods without consenting to the contract terms*.")(emphasis added)(internal quotes omitted).

[14] "Capacity" is here used in the sense of suitability, not vacancy. (Doc. 168 at 8 (Dog River was the only marina "which could serve the vessel's needs")).

[15] To the extent the declaration is artfully limited to "Mobile, Alabama" to the exclusion of its environs, the petitioner and ICNA have done nothing to support the necessary premise that only a marina within the corporate limits of Mobile would suffice.

term in such a contract is itself reasonable, it will be enforced regardless of bargaining power and alternatives.[16] The petitioner and ICNA have not even asserted, much less supported, the proposition that a waiver-of-subrogation clause is substantively unreasonable.

## CONCLUSION

For the reasons set forth above, Dog River's motion for summary judgment is **granted** with respect to ICNA's claims against it and **granted** with respect to the petitioner's claims against it to the extent the petitioner received compensation from ICNA. In all other respects, Dog River's motion for summary judgment is **denied**.

DONE and ORDERED this 17th day of January, 2006.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[16] *E.g., Rehmann, Robson & Co. v. McMahan*, 466 N.W.2d 325, 329 (Mich. App. 1991) ("Even if the contract is adhesive under the first prong [addressing economic strength, bargaining power and alternative sources of supply], the challenged term is still enforceable if substantively reasonable and not oppressive or unconscionable.").